# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| JOSEPH KETCHUP, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 414-281 |
| | * | |
| SAVANNAH-CHATHAM COUNTY PUBLIC | * | |
| SCHOOL SYSTEM, | * | |
| | * | |
| Defendant. | * | |

## O R D E R

Presently before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims. (Doc. 16.) The Clerk of Court gave Plaintiff timely notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 17.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Plaintiff filed a response brief, and Defendant filed a reply brief. The time for filing materials in opposition has expired, and the motion is ripe for consideration. Upon consideration of the record evidence, relevant law, and the briefs of counsel, the Court **GRANTS** Defendant's motion for summary judgment.

## I. BACKGROUND

The present dispute arises out of Defendant's failure to promote Plaintiff, an African-American male currently employed by Defendant as an assistant principal, to the position of school principal (or variations thereof) for four (4) separate positions that were filled between June 2011 and December 2014. Plaintiff maintains that he was passed over for these promotions because of his race, gender, and/or as retaliation for having made a complaint of discrimination to the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff instituted the instant suit on December 24, 2014, alleging, *inter alia*, claims of race discrimination, gender discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* Viewing the evidence and factual inferences in the light most favorable to Plaintiff, the relevant facts of this dispute are as follows.

Plaintiff has been employed by Defendant from 1996 through the present. (Ketchup Aff., Doc. 20, Ex. A, at ¶¶ 3-4). Plaintiff began his employment with Defendant as an elementary school teacher at Thunderbolt Elementary School and was eventually promoted to the position of assistant principal at Myers Middle School in 2002. (Id. ¶¶ 4-7). In 2006, Plaintiff was transferred to an assistant principal position at West Chatham Middle School. (Id. ¶ 8.) In 2008, Plaintiff was

transferred to an assistant principal position at the Ester F. Garrison School of Visual & Performing Arts [formerly known as Shuman Fine Arts Academy] ("Garrison"). (Id. ¶ 10.) That same year, Plaintiff applied for the position of principal at West Chatham, for which he was not selected to interview, as well as other positions offered by Defendant, for at least one of which he was selected for interview but did not ultimately receive the position.[1] (Id. ¶ 11; Ketchup Dep., Doc. 22, Ex. B, at 63:13-20, 64:9-16.) In 2009, Plaintiff was transferred to an assistant principal position at Coastal Middle School. (Ketchup Aff. ¶ 20.) In May 2010, Plaintiff was transferred to an assistant principal position at East Broad Elementary School ("East Broad"). (Id. ¶ 22.)

On May 18, 2011, Plaintiff applied for the position of interim principal of East Broad, which position was advertised to the public by Defendant after its non-renewal of the then-sitting principal's employment contract.[2] (Id. ¶ 27.) Plaintiff

---

[1] Plaintiff also interviewed for a principal position with Defendant in 2007. (Ketchup Dep., Doc. 16, Ex. A, at 64:25-65:7.)

[2] As explained by Defendant's superintendent of schools, Dr. Thomas Lockamy, Jr., the typical procedure for "selecting" principals to serve at Defendant's schools is as follows: (1) the position is posted publicly online; (2) interested applicants apply to the posted position; (3) members of Defendant's human resources department review all applications and forward any applications meeting the position's minimum requirements to the relevant executive director; (4) the executive director screens the qualified applicants and selects from this pool a handful of the most qualified applicants for interview; (5) the selected qualified applicants are interviewed by the executive director and a panel of other individuals; (6) the executive director then reports on the results of these interviews to the chief academic officer, who in turn reports his recommendations to the superintendent; (7) the superintendent then provides a final recommendation

was not selected to interview for this position. (Id. ¶ 29.)
On or around June 1, 2011, Plaintiff learned that Ms. Kelli
Hamilton, a Caucasian female, had been appointed as interim
principal of East Broad. (Id.; Lockamy Dep., Doc. 16, Ex. B, at
20:14-19; Doc. 16, Ex. D, at 4.) On June 14, 2011, Plaintiff
was informed that he would be transferred to an assistant
principal position at DeRenne Middle School ("DeRenne") for the
2011-2012 school year. (Ketchup Aff. ¶ 32; Doc. 16, Ex. E, at
5.)

On September 21, 2011, Plaintiff filed an "Intake
Questionnaire" with the EEOC in which he complained of
employment discrimination on the basis of his race and his sex
in relation to the appointment of Ms. Hamilton as interim
principal of East Broad. (Ketchup Aff. ¶ 37; Doc. 20, Ex. B, at
3.) On October 27, 2011, Plaintiff executed and returned to the
EEOC his verified "Charge of Discrimination" in relation to Ms.
Hamilton's appointment.[3] (Ketchup Aff. ¶ 37; Doc. 20, Ex. C, at
2.)

---

to the school board to approve for hiring, which is then voted on by the
school board. (Lockamy Dep., Doc. 16, Ex. B, at 10:4-25; Ray Dep., Doc. 16,
Ex. K, at 17:21-20:4.) The superintendent, however, also has the authority
to recommend an individual to the school board to "appoint" as principal at
any point in the aforementioned process (or in lieu thereof), although
generally any individuals appointed as principals are done so on an interim
basis. (Lockamy Dep., Doc. 16, Ex. B, at 6:6-16, 20:14-19.)
[3] The October 27, 2011 Charge of Discrimination was received by Plaintiff
already pre-populated with information gleaned from the EEOC's review of
Plaintiff's September 21, 2011 Intake Questionnaire. (Doc. 20, Ex. C, at 2.)
The boxes for race discrimination and sex discrimination were both already
marked and a short description stated, inter alia, "I believe that I have

4

On April 15, 2012, Plaintiff applied for the position of principal of Garrison, which position was advertised to the public by Defendant. (Ketchup Aff. ¶¶ 50-51; Doc. 20, Ex. DD, at 2; Am. Compl., Doc. 8, ¶ 27.) Plaintiff was not selected to interview for this position. (Ketchup Aff. ¶ 50.) On or around July 1, 2012,[4] Plaintiff learned that Mr. Brian Keefer, a Caucasian male who was then-serving as assistant principal of Garrison, had been appointed as co-principal of Garrison (alongside co-principal Raymond Patricio, a Caucasian male who was then-serving as interim principal of Garrison).[5] (Ketchup Aff. ¶ 51; Doc. 20, Ex. D, at 3; Doc. 20, Ex. E, at 2.)

At the conclusion of the 2011-2012 school year, the principal position at DeRenne became vacant. (Ketchup Aff. ¶ 45.) Plaintiff timely applied, but was not selected to interview for this position. (Id. ¶ 46; Garcia Aff., Doc. 16, Ex. C, ¶¶ 20-21.) On or around September 6, 2012, Plaintiff learned that Ms. Carol Mobley, an African-American female, had

---

been discriminated against because of my sex, male and race, African American . . . . I believe that African American males, as a class, have been discriminated against . . . ." (Id.) Plaintiff's only addition to the pre-populated form was his signature. (Ketchup Aff. ¶ 37.)

[4] Defendant argues that Plaintiff knew or should have known about Mr. Keefer's appointment as of June 6, 2012, as Mr. Keefer's appointment was approved at the Savannah Chatham County Board of Education's "public June 6, 2012 Board Meeting, making the selection a matter of public record on June 6, 2012." (Doc. 22, at 11; Doc. 16, Ex. J, at 5.) Defendant, however, fails to provide any further factual or legal support for this proposition.

[5] Plaintiff does not appear to claim that the appointment of Mr. Patricio as co-principal involved race and/or sex discrimination and/or retaliation. (See Doc. 20, at 6 ("The second employment decision that [Plaintiff] contests is the appointment of Brian Keefer, Caucasian male, as interim co-principal for Garrison on July 1, 2012.").)

been selected as principal of DeRenne. (Ketchup Aff. ¶ 47; Doc. 16, Ex. O, at 4.)

On December 20, 2012, Plaintiff filed a new "Intake Questionnaire" with the EEOC in which he complained of employment discrimination on the basis of his race and his sex, as well as "retaliation for [filing his] EEOC charge 10/27/11," in relation to the appointment of Mr. Keefer as co-principal of Garrison and the selection of Ms. Mobley as principal of DeRenne. (Ketchup Aff. ¶ 56; Doc. 20, Ex. D, at 3.) Attached to Plaintiff's December 20, 2012 Intake Questionnaire was a letter from Plaintiff to the EEOC stating, *inter alia*, "I believe [Defendant] continues to discriminate against me because of my sex, male and race, African American . . . . I also believe this continued discrimination is retaliation for my EEOC Charge of Discrimination #415-2011-01171 filed October 27, 2011." (Doc. 20, Ex. E, at 2.) On February 23, 2013, Plaintiff executed and returned to the EEOC his verified "Charge of Discrimination" in relation to Mr. Keefer's appointment and Ms. Mobley's selection.[6] (Ketchup Aff. ¶ 56; Doc. 20, Ex. F, at 2.)

---

[6] As with the October 27, 2011 Charge of Discrimination, the February 23, 2013 Charge of Discrimination was received by Plaintiff already pre-populated with information gleaned from the EEOC's review of Plaintiff's December 20, 2012 Intake Questionnaire. (Doc. 20, Ex. F, at 2.) While the December 20, 2012 Intake Questionnaire (and Plaintiff's letter attached thereto) arguably raised issues of race and sex discrimination as well as retaliation, only the box for retaliation was marked and a short description stated, *inter alia*, "I believe that I have been discriminated against in retaliation for filing a formal charge of discrimination with the EEOC . . . ." (Id.) No mention of

At some point in 2014, Defendant advertised for a principal position to open the newly-created Rice Creek School [formerly known as Port Wentworth Upper School] ("Rice Creek"). (Levett Dep., Doc. 16, Ex. S, at 18:21-23). Plaintiff was not selected to interview for this position. (Ketchup Aff. ¶ 57.) On December 10, 2014, Dr. Troy Brown, a Caucasian male, was appointed as principal of Rice Creek. (Id. ¶ 58; Doc. 16, Ex. R, at 5.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

---

race or sex discrimination is explicitly included on the February 23, 2013 Charge of Discrimination. (Id.)

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Id.</u>

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. <u>Matsushita</u>, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. <u>Anderson</u>, 477 U.S. at 255; <u>McKenzie v. Davenport-Harris Funeral Home</u>, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence

8

will not suffice. <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990); <u>Pepper v. Coates</u>, 887 F.2d 1493, 1498 (11th Cir. 1989). "The non-moving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" <u>Bryant v. Dougherty Cty. Sch. Sys.</u>, 382 F. App'x 914, 917 (11th Cir. 2010) (quoting <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1343 (11th Cir. 2008)).

## III. DISCUSSION

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); <u>see also</u> 42 U.S.C. § 2000e-2(m) (employment actions where race, color, religion, sex, or national origin was a motivating factor are unlawful, even though other factors also motivated the action). Title VII also prohibits employers from "discriminat[ing] against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

Title VII does not, however, allow federal courts to second-guess an employer's nondiscriminatory business judgment, nor does it replace an employer's notions about fair dealing in the workplace with that of judges. Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1338 (11th Cir. 2015), cert. denied, 136 S. Ct. 2510 (2016). The courts are not a "super-personnel department" that assesses "the prudence of routine employment decisions, no matter how medieval, high-handed, or mistaken." Id. (quoting Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)). Employers are free to make adverse employment decisions against their employees for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its [decision] is not for a discriminatory reason." Id. (citing Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)).

## A. Plaintiff's Title VII and § 1983 Discrimination Claims

Discrimination claims relating to race, color, religion, sex, or national origin brought under Title VII and Section 1983 may be considered under either a "mixed-motive" or "single-motive" theory.[7] Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016). A discrimination claim may be successful under the mixed-motive theory by showing that unlawful bias was

---

[7] "Mixed-motive and single-motive discrimination are different theories of discrimination, as opposed to distinct causes of action. Specifically, they serve as alternative causation standards for proving discrimination." Quigg, 814 F.3d at 1235 n.4.

a motivating factor for an adverse employment action, even though other factors also motivated the action. Id. (citations omitted). Single-motive claims require a showing that bias was the "true reason" for the adverse action. Id. (citations omitted). Direct or circumstantial evidence may be utilized to establish discrimination under either theory.[8] Id.

The proper framework for analyzing single-motive discrimination claims based on circumstantial evidence is the familiar burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Flowers, 803 F.3d at 1335. The proper framework for examining mixed-motive discrimination claims based on circumstantial evidence is the framework set forth in White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008). Quigg, 814 F.3d at 1232.

Under the McDonnell Douglas framework, an employee asserting a single-motive discrimination claim bears the initial burden of establishing a prima facie case of discrimination. Flowers, 803 F.3d at 1336 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). In the failure-to-

---

[8] Direct evidence is evidence that, if believed, proves the existence of a fact without inference or presumption. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Id. (quotations and citations omitted); see also Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189-90 (11th Cir. 1997) (collecting examples of direct evidence of discrimination). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Wilson, 376 F.3d at 1086 (citations omitted). Here, Plaintiff has not alleged or otherwise introduced any direct evidence of discrimination.

promote context, the *prima facie* case consists of four elements: (1) that the plaintiff belongs to a protected class; (2) that he applied for and was qualified for a promotion; (3) that he was rejected despite his qualifications; and (4) that other equally or less-qualified employees outside his class were promoted. Bryant, 382 F. App'x at 917 (citations omitted); but see Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998) (plaintiff need only prove that he is qualified to perform the coveted job in establishing the fourth element of failure-to-promote *prima facie* case, although plaintiff may be forced to address the relative qualifications of a successful applicant if those qualifications are presented by defendant as its legitimate non-discriminatory reason). Once the employee establishes his *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Flowers, 803 F.3d at 1336 (citing Burdine, 450 U.S. at 254); see also Miles v. M.N.C. Corp., 750 F.2d 867, 869 (11th Cir. 1985) ("The burden on the [employer] is one of production rather than persuasion."). The employee must then present evidence sufficient to permit a reasonable factfinder to conclude that the reason proffered by the employer for the adverse employment action is mere pretext and not the "true reason" for the adverse employment action. Burdine, 450 U.S. at 253; see also Haugabrook v. Cason, 518 F. App'x 803, 807 (11th

Cir. 2013) ("The evidence must show such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.") (citations omitted). Establishing the elements of the McDonnell Douglas framework alone is not necessarily sufficient to survive summary judgment, however, as the critical decision that must be made is whether the employee has "created a triable issue concerning the employer's discriminatory intent." Flowers, 803 F.3d at 1336 (quoting Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).

Under the White framework, an employee asserting a mixed-motive discrimination claim "need only produce evidence sufficient to convince a [reasonable] jury that: (1) the [employer] took an adverse employment action against the [employee]; and (2) a protected characteristic was a motivating factor for the [employer's] adverse employment action." Quigg, 814 F.3d at 1232 (citing White, 533 F.3d at 400). Like the single-motive analysis under the McDonnell Douglas framework, the employee "will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. at 1240 (quoting Smith, 644 F.3d at 1328).

Here, Plaintiff asserts that Defendant's "failure to interview and promote" him to the position of principal (and variations thereof) of East Broad, Garrison, DeRenne, and/or Rice Creek were "based on his being an African American male." (Doc. 20, at 6-7; see also Am. Compl. ¶¶ 35, 41, 54.) To date, Plaintiff has not explicitly asserted that Defendant acted with mixed-motives when it failed to promote him to the aforementioned positions, and thus it would not be improper to only consider his race and gender discrimination claims under a single-motive theory. See E.E.O.C. v. TBC Corp., 532 F. App'x 901, 902-903 (11th Cir. 2013) (to pursue a mixed-motive theory of discrimination, the plaintiff must argue that the case involved mixed-motives at some point in the proceedings). Regardless of which theory Plaintiff pursues, however, Plaintiff's race and gender discrimination claims fail due to his failure to create a genuine factual dispute that he was not promoted, even in part, because of his race or gender.

### 1. *Kelli Hamilton and East Broad*[9]

Plaintiff argues that Defendant's proffered reasons for appointing Ms. Hamilton, as opposed to Plaintiff, as interim

---

[9] Defendant disputes whether Plaintiff has sufficiently established a *prima facie* claim of race and/or sex discrimination under the McDonnell Douglas framework in each of his various claims of race and sex discrimination. (See Doc. 16.) As Plaintiff's claims fail on their merits regardless of whether Plaintiff has established a *prima facie* case, however, the Court will assume for the sake of its analysis, without deciding, that Plaintiff has established its *prima facie* case on each of his race and sex discrimination claims.

principal of East Broad are pretextual. In support of this position, Plaintiff first argues that Defendant's assessment that he was "part of the unsuccessful [East Broad] leadership team that was being replaced in 2011" and subsequent elimination from consideration for interim principal at East Broad was incompatible with the actual status of East Broad and his own efforts (or at least was based on incomplete information). (Doc. 20, at 21-24; see also Lockamy Dep., Doc. 20, Ex. J, at 14:23-17:2, 18:12-19:13, 19:25-20:7; Doc. 20, Ex. O, at 3-4.) Plaintiff's burden, however, is not to show that Defendant's reasons for not promoting him were ill-founded, but rather that unlawful discrimination was the motivating factor. See Alvarez, 610 F.3d at 1267; Haugabrook, 518 F. App'x at 807 ("A proffered reason is not pretext for discrimination unless it is shown both that the reason was false *and* that discrimination was the real reason.") (emphasis original) (citations omitted). Therefore, this argument is unavailing as it is nothing more than a claim that Defendant made the wrong decision based on inaccurate information. See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer" and he "cannot succeed by simply quarreling with the wisdom of that reason.").

Plaintiff also argues that Defendant's reasoning is pretext because he was just as qualified as Ms. Hamilton, if not more so, given his prior contributions to and greater familiarity with the "unique needs of East Broad." (Doc. 20, at 26-27.) Plaintiff, however, cannot prove pretext by "simply arguing or even by showing that he was better qualified than the person who received the position he coveted." See Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (citations omitted). Rather, Plaintiff must show "that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. While Plaintiff spends ample time discussing his own achievements and his subjective beliefs as to why he should have been selected for the position, he fails to contrast his own qualifications with those of Ms. Hamilton or otherwise address how these distinctive qualities made him so decidedly more qualified than Ms. Hamilton that no reasonable person could have chosen her over him.[10] (Compare Ketchup Aff. ¶ 31; with Doc. 20, Ex. N; and Doc. 16, Ex. T, at 10-12.) While Plaintiff attacks Ms. Hamilton's achievements at East Broad and her prior

---

[10] Ms. Hamilton herself had been employed by Defendant as a teacher for thirteen years, a director of gifted education for approximately one year, and an assistant principal for five years. (Doc. 16, Ex. T, at 10-12.)

activities in the school system, he provides no factual support for his assertions other than an individual Adequate Yearly Progress ("AYP") report for East Broad for the 2009-2010 school year,[11] and he fails to address East Broad's continued decline while he was assistant principal despite him "not actually failing at his position." (Doc. 20, at 21-22.) Therefore, Plaintiff has failed to demonstrate that no reasonable person could have believed that Ms. Hamilton's qualifications were superior to his own, and his subjective belief that he was the most qualified candidate is irrelevant. See Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163-64 (11th Cir. 2006).

Plaintiff also argues that Defendant "shifted in its explanation" as to the reasons for selecting Ms. Hamilton over Plaintiff on the basis that Defendant has not raised reasons in the instant litigation that it raised in its EEOC position statement. (Doc. 20, at 20-21.) In its EEOC position statement dated December 12, 2011, Defendant stated, *inter alia*, that it was likely that Plaintiff's "poor performance during [a prior] interview process has negatively impacted his ability to be

---

[11] Ms. Hamilton served as assistant principal at East Broad from August 2008 to June 2010. (Doc. 16, Ex. S, at 10.) While Plaintiff appears to pin the responsibility for East Broad's poor 2009-2010 AYP report on Ms. Hamilton alone, he does not similarly give her credit for the passing 2008-2009 AYP report or take credit for East Broad's poor 2010-2011 AYP report (*i.e.*, the year when Plaintiff was assistant principal at East Broad). (Doc. 20, at 21-22; Doc. 20, Ex. R; Doc. 20, Ex. S.)

selected to interview for subsequent principal positions."[12] (Doc. 20, Ex. O, at 4.) Plaintiff's argument that Defendant has not renewed this reasoning in the instant litigation ignores that Defendant considered "candidates' past interview performance" in determining their relative qualifications. (Garcia Aff. ¶ 14; Wichman Aff., Doc. 16, Ex. H, ¶ 6). Even assuming that Defendant had not renewed this specific line of reasoning, however, it still would not be sufficient to create a genuine issue of pretext. See Phillips v. Aaron Rents, Inc., 262 F. App'x 202, 210 (11th Cir. 2008) ("If an employer offers different reasons for terminating an employee, those reasons must be fundamentally inconsistent in order to constitute evidence of pretext.") (citing Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997)). In selecting candidates for interview/hire, Defendant considered the candidates' qualifications (Garcia Aff. ¶ 14; Wichman Aff. ¶ 6), and excluding a candidate based on their past interview performance would not be fundamentally inconsistent therewith. Compare Bechtel Const. Co. v. Sec'y of Labor, 50 F.3d 926, 935 (11th Cir. 1995) (finding evidence of pretext due to shifting explanations where employer explicitly denied in district court

---

[12] Plaintiff states that, contrary to Defendant's claims, he did not actually interview in 2009 for the position which is the basis of Defendant's "poor [prior interview] performance" reasoning. (Doc. 20, at 20 & Ex. P; Ketchup Aff. ¶ 13.) Plaintiff does admit, however, that he previously interviewed for two different positions with Defendant in 2007 and 2008. (Ketchup Dep. Doc. 16, Ex. A, at 64:25-65:7.)

18

action that employee's job performance was basis for termination, but on appeal argued that employee's layoff was due solely to poor performance).

Plaintiff also argues pretext can be inferred from Defendant's decision to abandon the selection process and appoint Ms. Hamilton as interim principal. (Doc. 20, at 25-26.) As an initial matter, Plaintiff has failed to provide any evidentiary support for its conclusion that the use of the appointment process, or the abandonment of the selection process in favor thereof, is in contravention of Defendant's policies.[13] Nevertheless, even assuming it is indeed a violation of Defendant's policies, this alone does not necessarily indicate pretext. See Springer, 509 F.3d at 1350 (citing Kennedy v. Landon, 598 F.2d 337, 341 (4th Cir. 1979)); Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995)). Such evidence goes only to the procedure of the employment action, and not to its purpose or motivation. See Randle, 69 F.3d at 454. As Defendant is not relying upon the procedure of the employment action as a reason for its ultimate decision to choose Ms.

---

[13] The only evidence cited by Plaintiff for this position is a statement by a member of Defendant's human relations department, Mr. Ramon Ray, that the abandonment of the selection process in favor of the appointment process is "rare." (Ray Dep., Doc. 20, Ex. V, at 34:10-19). This testimony, however, neither necessarily contradicts Mr. Lockamy's testimony as to the superintendent's authority to appoint principals nor establishes that the use of said authority is in deviation of Defendant's internal policies. See note 2, *supra*.

Hamilton over Plaintiff,[14] Plaintiff cannot show pretext without a further showing that the disregarded process directly and uniquely disadvantaged certain protected classes. See id. Here, as Plaintiff has provided no evidence that the use of the appointment process disadvantaged certain protected classes or was otherwise based on an unlawful discriminatory basis, this argument also fails to show pretext. See Springer, 509 F.3d at 1350; Randle, 69 F.3d at 454.

Finally, Plaintiff speculates and summarily concludes that his race and gender were the reason for being passed over in favor of Ms. Hamilton, as Defendant "was in the midst of eradicating the African American male administrators from its rosters."[15] (Doc. 20, at 25.) Yet Plaintiff has produced no

---

[14] Plaintiff's reference to Williams v. Georgia Public Safety Training Center, 5:11-CV-445, 2013 WL 4505816 (M.D. Ga. Aug. 22, 2013), is inapposite because unlike the employer in Williams, Defendant does not base its reasons for appointing Ms. Hamilton on the claim that it undertook structured procedures to determine who to appoint. See Williams, 2013 WL 4505816 at *4-6.

[15] Plaintiff has provided unsubstantiated claims that, from 2005 to 2011, the number of African-American males employed by Defendant as principals "decreased from 40% to 0%" and that he was "the lone African American male assistant principal in the K-8/middle school division." (Ketchup Aff., Doc. 20, Ex. A, ¶ 36.) Even assuming arguendo that these figures are correct and properly before the Court, Plaintiff has not controlled for external factors or applied rigorous statistical analysis to these anecdotal figures that would indicate their reliability. See Mitchell v. City of LaFayette, 504 F. App'x 867, 870 (11th Cir. 2013) (citations omitted) ("Absent any analytical foundation, statistical evidence is virtually meaningless, and thus, cannot have any probative value."); see also Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (that no black employees were present in predominately white area is only relevant to discrimination analysis if plaintiff presents evidence as to how many black applicants applied and were rejected along with evidence of the success rate of equally qualified white applicants, as "[a]necdotal information is no substitute for meaningful statistical analysis"); Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821, 827-28 (11th Cir. 2000) (that plaintiff was first female principal in county was not evidence of gender discrimination absent evidence of how many other women

evidence demonstrating that race- or gender-based animus actually factored into Defendant's decision to choose Ms. Hamilton over Plaintiff, such as remarks or statements indicative of an impermissible discriminatory nature or the existence of any harbored race or gender bias against African-Americans or males.[16] Therefore, Plaintiff's conclusory allegations of race and/or sex discrimination, without specific supporting facts, have no probative value and are insufficient to survive summary judgment. See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (citing Gordon v. Barnes Pumps, Inc., 999 F.2d 133 (6th Cir. 1993); Pitts v. Shell Oil Co., 463 F.2d 331 (5th Cir. 1972)).

---

applied and what their qualifications were or of the track record of unremoved males); Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962 (11th Cir. 1997) (employee's anecdotal evidence that, despite employing 650 employees in eight plants, employer had only had three black supervisory employees, was not evidence of discriminatory motive with respect to employee's claims of failure to promote absent analytical foundation). Here, Plaintiff has not provided any information on the total number of African-American or male applicants for principal positions, let alone information concerning the overall demographics of qualified applicants or other relevant statistics, during the highlighted time period. Accordingly, the Court finds that Plaintiff's figures are unavailing to the discrimination analysis and do not show either that Defendant's proffered reasons for not hiring/promoting Plaintiff is pretext for discrimination or that Defendant harbors race or gender bias. See Mitchell, 504 F. App'x at 870.

[16] Plaintiff's counsel also raises allegedly relevant figures and statistical analysis through the body of its brief and exhibits thereto (Doc. 20, at 16-17, 25 & Ex. I), but has failed to properly introduce these figures and analysis. See Mitchell, 504 F. App'x at 870 (11th Cir. 2013) ("[T]o be accepted, statistical calculations must come from a witness, not a party's lawyer.") (citing Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1315 n. 16 (11th Cir. 1998)); see also Lugue v. Hercules, Inc., 12 F. Supp. 2d 1351, 1355-56 (S.D. Ga. 1997) ("Documents which are not properly authenticated and verified do not meet the requirements of Rule 56(e) and should not be considered when evaluating a motion for summary judgment.") (citing First Nat'l Life Ins. Co. v. California Pacific Life Ins. Co., 876 F.2d 877, 881 (11th Cir. 1989); Davis v. Howard, 561 F.2d 565, 569 (5th Cir. 1977)).

As Plaintiff has failed to present sufficient evidence that would allow a reasonable factfinder to conclude that the reasons given by Defendant for their choice of Ms. Hamilton over Plaintiff were a pretext for race or gender discrimination, Plaintiff's related single-motive race and gender discrimination claims with respect to this position fail.

### 2. Brian Keefer and Garrison[17]

Plaintiff argues that Defendant's proffered reasons for appointing Mr. Keefer, as opposed to Plaintiff, as co-principal of Garrison are pretextual. As to Plaintiff's repeated argument

---

[17] Viewing the evidence and factual inferences in the light most favorable to Plaintiff, Plaintiff has alleged that he submitted a timely and sufficient charge to the EEOC alleging race, gender, and retaliation discrimination with regard to the appointment of Mr. Keefer and selection of Ms. Mobley. As it relates to Defendant's arguments concerning the timeliness of Plaintiff's second EEOC charge with regards to the appointment of Mr. Keefer, it is unclear from the evidence before the Court the exact date Plaintiff learned of Mr. Keefer's appointment, and the Court cannot state as a matter of law that a reasonable person would have known of Mr. Keefer's appointment solely from the school board's minutes dated June 6, 2012 announcing the appointment. Compare Stafford v. Muscogee Cty. Bd. of Educ., 688 F.2d 1383, 1387-88 (11th Cir. 1982) (assistant principal should have known by beginning of school year (i.e., September) that he did not receive position of principal to which he had applied). As it relates to Defendant's arguments concerning the scope of Plaintiff's second EEOC charge with regards to race and/or sex discrimination claims, the Court is hesitant to dismiss these claims for failure to exhaust administrative remedies given that it appears reasonable in this case for Plaintiff's claims of continued race and sex discrimination to be considered to be "like or related to, or [to grow] out of" the allegations of retaliation for prior complaints of race and sex discrimination contained in his second charge. See Pizzini v. Sec'y for Dep't of Homeland Sec., 495 F. App'x 991, 994 n.3 (11th Cir. 2012); see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460-61, 465 ("The scope of an EEOC complaint should not be strictly interpreted" as courts are "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII.") (internal quotations and citations omitted); Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277 (11th Cir. 2004) (employee's retaliation claim not administratively barred by her failure to only mark "race" and "sex" boxes on EEOC charge where employee's retaliation claim was "inextricably intertwined with her complaints of race and sex discrimination" and any subsequent EEOC investigation would have "reasonably uncovered any evidence of retaliation."). Accordingly, the Court will consider these claims on their merits.

that the appointment process, as opposed to the selection process, is a violation of Defendant's own internal policies and therefore evidence of pretext (doc. 20, at 27-28), it again fails for the same reason articulated in Section III.A.1, *supra*. See Springer, 509 F.3d at 1350; Randle, 69 F.3d at 454.

As to Plaintiff's argument that Mr. Keefer was unqualified (or that Plaintiff was more qualified) to be appointed as co-principal (doc. 20, at 28-29), it also fails for similar reasons as those articulated in Section III.A.1, *supra*. While Plaintiff introduces evidence that Mr. Keefer may have been unqualified for the position of principal of Garrison (Ray Dep., Doc. 20, Ex. V, at 50:11-51:16), Plaintiff fails to introduce any evidence as to whether Mr. Keefer was unqualified for the position to which he was actually appointed (*i.e.*, *co*-principal of Garrison). (Ray Dep., Doc. 16, Ex. K, at 48:25-50:1)[18] Further, while Plaintiff complains about the relatively short tenure of Mr. Keefer's previous employment with Defendant and alleges in a conclusory fashion that Mr. Keefer lacked

---

[18] As explained by Mr. Ray, a "co-principal is not a dual principal" and "his pay is not inline [sic] with a principal." (Ray Dep., Doc. 16, Ex. K, at 48:25-50:1.) Rather, a "co-principal is more of a title to align with a requirement by [the Teacher Retirement System of Georgia] more so than to say that we had two principals." (Id.) As further explained by Mr. Ray, the Teacher Retirement System of Georgia will only allow a principal to come out of retirement if they return as "a teacher full time, as a counselor full time, as a media specialist full time, as a principal full time in a different school, [or] as a superintendent full time[] in a different school system." (Id.) As such, Defendant used the title of co-principal, as opposed to "center leaders" or some other designation, because Mr. Patricio, the other co-principal at Garrison, was a previously-retired principal. (Id.)

experience with the arts, Plaintiff fails to introduce sufficient evidence regarding Mr. Keefer's qualifications relative to those of Plaintiff that would allow a fact-finder to engage in a substantive comparison of their qualifications or otherwise determine pretext or discriminatory motive. <u>See</u> <u>Springer</u>, 509 F.3d at 1349; <u>Brooks</u>, 446 F.3d at 1163-64; <u>see</u> <u>also</u> <u>Nichols v. Lewis Grocer</u>, 138 F.3d 563, 569 (5th Cir. 1998) ("[A]n attempt to equate years served with qualifications is unpersuasive.") (citations omitted). Also, Plaintiff points out an inconsistency in Defendant's decision to appoint Mr. Keefer as co-principal of Garrison for "purposes of stability" while Plaintiff was not similarly appointed/selected as principal of East Broad or DeRenne for similar reasons. This argument, however, is little more than a complaint against the wisdom of Defendant's employment decisions as opposed to evidence of pretext. <u>See</u> <u>Haugabrook</u>, 518 F. App'x at 807 (11th Cir. 2013); <u>Chapman</u>, 229 F.3d at 1030 ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").

Finally, Plaintiff has produced no probative evidence demonstrating that race or gender-based animus factored into Defendant's decision to choose Mr. Keefer over Plaintiff, such

as remarks or statements indicative of an impermissible discriminatory nature or the existence of any harbored race or gender bias against African-Americans or males. While Plaintiff makes conclusory allegations regarding alleged race and gender bias held by relevant decision makers, the admissible evidence used to support these conclusions does not bear out these claims even on their face, and thus Plaintiff's allegations have no probative value. See Holifield, 115 F.3d at 1564 n.6.

As Plaintiff has failed to present sufficient evidence that would allow a reasonable factfinder to conclude that the reasons given by Defendant for its appointment of Mr. Keefer as opposed to Plaintiff was a pretext for race or gender discrimination, Plaintiff's race and gender discrimination claims with respect to this position fail.

### 3. Carol Mobley and DeRenne

In arguing that Defendant's proffered reasons for selecting Ms. Mobley are pretextual, Plaintiff repeats similar arguments as those addressed in Sections III.A.1 and III.A.2, *supra*, and as such, his arguments fail for similar reasons. Furthermore, as with his arguments against Ms. Hamilton's and Mr. Keefer's appointment, Plaintiff has failed to present sufficient evidence regarding Ms. Mobley's qualifications relative to those of Plaintiff that would allow a reasonable fact-finder to conclude that no reasonable person could have selected her over

Plaintiff.[19]  See Springer, 509 F.3d at 1349; Brooks, 446 F.3d at 1163-64; Nichols, 138 F.3d at 569.  Also, Plaintiff's recycled arguments that he would have been a better fit or that selecting him would have provided better stability are again nothing more than an impermissible attempt to substitute Defendant's business judgment with his own.  See Haugabrook, 518 F. App'x at 807; Chapman, 229 F.3d at 1030.  As Plaintiff has failed to present sufficient evidence that would allow a reasonable factfinder to conclude that the reasons given by Defendant for its selection of Ms. Mobley as opposed to Plaintiff were a pretext for race or gender discrimination or that discriminatory input otherwise factored into Ms. Mobley's selection, Plaintiff's race and gender discrimination claims with respect to this position fail.

### 4. *Troy Brown and Rice Creek*[20]

In arguing that Defendant's proffered reasons for appointing Dr. Brown as principal of Rice Creek are pretextual, Plaintiff recycles many of his prior arguments which in turn fail for the same reasons articulated in Sections III.A.1,

---

[19] Notably, before her selection as principal at DeRenne, Ms. Mobley had been employed in Florida as a "Coordinator of School Improvement for Turnaround Schools" for approximately three years, a middle school principal for three years, an assistant principal for four years, and a teacher for six years, among other roles.  (Doc. 16, Ex. U, at 9-12.)

[20] Plaintiff implicitly concedes that, having failed to exhaust his administrative remedies under Title VII, the only claim available to Plaintiff against Defendant in relation to the appointment of Dr. Brown is a 42 U.S.C. § 1981 race discrimination claim brought pursuant to Section 1983.  (Doc. 20, at 7; Am. Compl. ¶ 54.)  Yet, where Title VII and Section 1981 claims are based on the same set of facts, they have the same elements and are subject to the same legal analysis.  Quigg, 814 F.3d at 1235 (citations omitted).

III.A.2, and III.A.3, *supra*.[21,22]  As to Plaintiff's arguments
that pretext is evident from Defendant's alleged use of
subjective criteria in appointing Dr. Brown, they are unavailing
even if true as employers are free to base their employment
decisions upon subjective criterion so long as they do not
discriminate against a protected class.  See Chapman, 229 F.3d
at 1034 ("A subjective reason is a legally sufficient,
legitimate, nondiscriminatory reason if the defendant
articulates a clear and reasonably specific factual basis upon
which it based its subjective opinion.").  Here, Defendant's
allegedly subjective criteria were that Dr. Brown was an
experienced principal who was "very organized," "very active and
known throughout the community," and who was "able to bring
people together well" (Levett Dep., Doc. 16, Ex. S, at 18:4-20),
all of which are eminently reasonable bases upon which to choose
between job applicants.  See Springer, 509 F.3d at 1349
("Personal qualities factor heavily into employment decisions
concerning supervisory or professional positions. Traits such as
common sense, good judgment, originality, ambition, loyalty, and
tact often must be assessed primarily in a subjective fashion,

---

[21] Plaintiff's complaints regarding the use of the appointment process as
compared to the selection process fail for the same reasons articulated in
Section III.A.1, *supra*.  See Springer, 509 F.3d at 1350; Randle, 69 F.3d at
454.

[22] Plaintiff again has failed to present sufficient evidence regarding Dr.
Brown's qualifications relative to those of his own that would allow a
reasonable jury to conclude that no reasonable person could have selected Dr.
Brown over Plaintiff.  See Springer, 509 F.3d at 1349; Brooks, 446 F.3d at
1163-64; Nichols, 138 F.3d at 569.

yet they are essential to an individual's success in a supervisory or professional position.") (citations omitted). That Plaintiff disagrees with the weight attached to these or other lawful criteria or the analysis applied to his own capabilities is not evidence of pretext, but rather an impermissible attempt to second-guess Defendant's employment decisions. See Chapman, 229 F.3d at 1030. Plaintiff's citation to Joshi v. Florida State Univ. Health Ctr., 763 F.2d 1227 (11th Cir. 1985) is inapposite, because unlike in Joshi, Plaintiff's qualifications were reviewed prior to his non-selection for interview or promotion. (Levett Dep., Doc. 16, Ex. S, at 21:8-22:13).

As with the preceding sections, Plaintiff has failed to present sufficient evidence that would allow a reasonable factfinder to conclude that the reasons given by Defendant for its appointment of Dr. Brown as opposed to Plaintiff were pretext for race discrimination or that discriminatory input otherwise factored into Dr. Brown's appointment. Accordingly, Plaintiff's related race discrimination claim with respect to this position fails.

### B. Plaintiff's Title VII Retaliation Claims

In contrast to other discrimination claims under Title VII, retaliation claims brought under Title VII may only be considered under a single-motive theory. Univ. of Texas Sw.

Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."); Jones v. Suburban Propane, Inc., 577 F. App'x 951, 954-55 (11th Cir. 2014) ("To establish a causal connection, a plaintiff must demonstrate that the employer's desire to retaliate was a but-for cause of the materially adverse action.") (citation omitted). As such, the McDonnell Douglas burden-shifting analysis applies in cases of retaliation that rely on circumstantial evidence. Brown v. Alabama Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010) (citations omitted). In order to establish a prima facie case for retaliation using the McDonnell Douglas framework, the employee must show that: (1) he engaged in statutorily protected activity, such as opposing or reporting an unlawful employment practice; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and adverse action. Id.; see also Quigg, 814 F.3d at 1244 (citing Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000)). The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the

employer is a pretext for prohibited, retaliatory conduct. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).

Here, similar to his claims of race and sex discrimination, Plaintiff asserts that Defendant's "failure to interview and promote" him to the position of co-principal at Garrison and/or principal at DeRenne were "in retaliation for his prior protected activity (*i.e.*, his October 27, 2011 Charge of Discrimination)." (Doc. 20, at 6-7; Am. Compl. ¶¶ 47-48.) Even assuming he has established *prima facie* cases of retaliation, however, Plaintiff has failed to demonstrate a genuine factual dispute as to pretext or that he was otherwise not selected/appointed as (co-)principal in retaliation for his having engaged in protected activity.

### 1. Brian Keefer and Garrison

As an initial matter, Plaintiff's retaliation claims in regard to the appointment of Mr. Keefer as co-principal at Garrison fail because he has not established the third element of his *prima facie* case, namely causation. A plaintiff's burden to prove causation can be met by showing a close temporal proximity between the statutorily protected activity and adverse-employment action. Suburban Propane, Inc., 577 F. App'x at 955 (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)). If there was a significant time gap

between the protected expression and the adverse action, the plaintiff must offer additional evidence to demonstrate a causal connection, such as a "pattern of antagonism" or that the adverse action was the "first opportunity" for the employer to retaliate. Id. (citations omitted).

Here, Plaintiff filed his first Charge of Discrimination on October 27, 2011. (Ketchup Aff. ¶ 37; Doc. 20, Ex. C, at 2.) Mr. Keefer was selected for the position of co-principal of Garrison on June 6, 2012. (Doc. 16, Ex. J, at 5.) This seven-month delay between the protected activity and the adverse employment action is too attenuated, absent other evidence, to show causation. See Cooper Lighting, Inc., 506 F.3d at 1364 ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to support a retaliation claim without further evidence of causation.) (citations omitted). Plaintiff argues that despite this attenuated temporal proximity, there is a causal connection because "the adverse actions complained of [i.e., the appointment of Mr. Keefer as co-principal of Garrison and selection of Ms. Mobley as principal of DeRenne] were the first opportunity for [Defendant] to retaliate, as these were the first principal positions that [Plaintiff] applied for following his EEOC complaint." (Doc. 20, at 33.) This argument ignores, however, that Plaintiff was an active employee of Defendant

during the relevant seven-month gap and that Defendant could have taken any number of other adverse employment actions against Defendant during that time, such as reprimand, demotion, suspension, or termination.[23] As such, appointing Mr. Keefer was not the first opportunity for Defendant to retaliate against Plaintiff for his protected activity. Having presented no other grounds for explaining the attenuated temporal association between his protected activity and the appointment of Mr. Keefer, Plaintiff's relevant retaliation claim fails as a matter of law due to his failure to establish his *prima facie* case. See Suburban Propane, Inc., 577 F. App'x at 955. Even assuming *arguendo* that Plaintiff is able to establish his *prima facie* claim, however, his retaliation claim would still fail because, as set forth in Section III.A.2, *supra*, Plaintiff has failed to present evidence sufficient to permit a reasonable factfinder to conclude that the reasons proffered by Defendant for appointing Mr. Keefer were mere pretext or, more importantly, to create a

---

[23] Compare Dale v. Wynne, 497 F. Supp. 2d 1337, 1346 (M.D. Ala. 2007) (six-week gap between protected activity and adverse employment action not significant delay to defeat a finding of causal connection where the employee was on medical leave during the entirety of the gap); Porter v. Cal. Dep't of Corr., 419 F.3d 885, 895 (9th Cir. 2005) (significant delay between protected activity and adverse employment actions did not defeat a finding of a causal connection where the defendant did not have the opportunity to retaliate until he was given responsibility for making personnel decisions); Ford v. GMC, 305 F.3d 545, 554-55 (6th Cir. 2002) (although there was a five-month gap between the protected activity and the adverse employment actions, the employee was under the control of a different supervisor during the gap).

genuine issue concerning Defendant's alleged unlawful intent.[24]
See Burdine, 450 U.S. at 253; Flowers, 803 F.3d at 1336;
Haugabrook, 518 F. App'x at 807.

### 2. Carol Mobley and DeRenne

Plaintiff has similarly failed to establish the causation
element of his *prima facie* retaliation case in regards to the
selection of Ms. Mobley as principal of DeRenne. Ms. Mobley was
selected for the position of principal on September 5, 2012
(*i.e.*, over ten months after Plaintiff's October 27, 2011 Charge
of Discrimination). (Ketchup Aff. ¶ 47; Doc. 16, Ex. O, at 4.)
This ten-month delay is too attenuated, absent other evidence,
to show causation. See Cooper Lighting, Inc., 506 F.3d at 1364.
As explained in Section III.B.1, Plaintiff's argument that the
selection of Ms. Mobley was the first opportunity for Defendant
to retaliate is factually incorrect, as Defendant had the
opportunity to take adverse employment actions against Plaintiff
during this ten-month period where he was actively employed by
Defendant. Having presented no other grounds for explaining the
attenuated temporal association between his protected activity
and the selection of Ms. Mobley, Plaintiff's relevant
retaliation claim fails as a matter of law. See id.
Nevertheless, even assuming that Plaintiff is able to establish

---

[24] Plaintiff has set forth no additional or alternative facts or legal
argument in support of his retaliation claim in relation to Mr. Keefer's
appointment than those proffered in support of his related claims for race
and sex discrimination. (See Doc. 20, at 32-34.)

a *prima facie* claim with regards to Ms. Mobley's selection, his retaliation claim would still fail because, as set forth in Section III.A.3, *supra*, Plaintiff has failed to present evidence sufficient to permit a reasonable factfinder to conclude that the reasons proffered by Defendant for appointing Ms. Mobley were mere pretext or, more importantly, to create a genuine issue concerning Defendant's alleged unlawful intent.[25]  See Burdine, 450 U.S. at 253; Flowers, 803 F.3d at 1336.

## IV. CONCLUSION

Even assuming *arguendo* that Plaintiff has exhausted his administrative remedies and has presented a *prima facie* case of discrimination where required, Defendant has proffered unrebutted nondiscriminatory reasons for appointing/selecting the relevant individuals instead of Plaintiff.  Plaintiff primarily takes issue with Defendant's analysis of the qualifications of the employees ultimately hired or promoted or other similar reasons given for choosing these individuals over Plaintiff.  Plaintiff also disapproves of the process used to choose which individuals would be selected or appointed.  These are all disagreements with Defendant's business judgment, however, and not evidence that Defendant was motivated by unlawful reasons.  More importantly, Plaintiff has failed to

---

[25]  Again, Plaintiff has set forth no additional or alternative facts or legal argument in support of his retaliation claim in relation to Ms. Mobley's selection than those proffered in support of his related claims for race and sex discrimination.  (See Doc. 20, at 32-34.)

provide evidence, as opposed to conjecture, that discriminatory input factored into Defendant's employment decisions. Indeed, Plaintiff has provided no evidence that casts the slightest doubt upon Defendant's actions or reasons for those actions. As such, Defendant is entitled to summary judgment on all of Plaintiff's claims.

For these reasons, Defendant's Motion for Summary Judgment on All of Plaintiff's Claims (doc. 16) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of Defendant on all of Plaintiff's claims, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this *26th* day of September, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA